IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRIAN L. BROWN, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:07-CV-2154-O (BH) |
| | § | |
| ROMULO ARMENDARIZ, et al., | § | |
|     Defendants. | § | Pretrial Management |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS

Pursuant to Special Order No. 3-251, the District Court referred this case for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations to the District Court on dispositive motions. Before the Court are

    (1)    Defendant Romulo Armendariz's *Motion for Summary Judgment and Brief in Support* ("Mot."), filed April 21, 2008 (doc. 20);

    (2)    *Plaintiff's Motion to "Strike" Affidavits Pursuant to L.R. 7.1(h) in Brief* ("Mot. Strike"), filed June 13, 2008 (doc. 36); and

    (3)    *Plaintiff's Response to Defendant's Motion for Summary Judgment in Brief* ("Resp."), filed June 13, 2008 (doc. 38).[1]

Having reviewed the pertinent filings[2] and the applicable law, the Court recommends that Defendant

---

[1] Plaintiff's response incorporated two additional motions: (1) a motion to amend his complaint to identify five unnamed defendants (Resp. at 5-9), and (2) a motion to stay pursuant to Rule 56(f) (*see* Resp. at 22-26). As to the motion to amend, Plaintiff identified the same five individuals in earlier pleadings, and this Court ordered these five individuals to be served on April 30, 2008. Because Plaintiff has already received the relief sought in his motion to amend, the motion is **DENIED** as **moot**. Plaintiff's Rule 56(f) motion is addressed in Part VI, *infra*.

[2] On July 18, 2008, the Court received Plaintiff's *Traverse to Armendariz's Reply in Support to Summary Judgment* ("Traverse"), which largely responds to the issues raised in Defendant's reply. Within the traverse, Plaintiff specifically moves for leave to "allow" the traverse to re-focus the issue of Defendant Armendariz's involvement and to re-enforce his request for discovery pursuant to Fed. R. Civ. P. 56(f). (*See* Traverse at 1.) Local Rule 7.1 provides for a motion, a response, and a reply, except with leave of Court. Because Plaintiff has had ample opportunity to present the information and arguments contained within the traverse, the motion for leave is **DENIED**. Even if considered, however, the Traverse would not alter any finding or ruling herein. To the extent that the *Traverse* constitutes a reply to Plaintiff's motion to strike, it likewise provides no basis for altering the Court's ruling on the motion to strike, which is addressed in Part II, *infra*. Further, the portions addressing the Rule 56(f) motion merely reiterate his plea for a stay, which is addressed in Part VI, *infra*.

Armendariz's *Motion for Summary Judgment* be **GRANTED**.

## I. BACKGROUND

Plaintiff Brian Brown ("Plaintiff") is a federal prisoner serving a life sentence for kidnaping and aggravated sexual abuse of a child. (Mot. App. at 3; Resp. at 14.) After his sentencing, the Team Charlie staff at the Bureau of Prison's ("BOP") Designation and Sentence Computation Center ("DSCC"), located in Grand Prairie, Texas, assigned Plaintiff to a BOP facility. (Mot. App. at 5-6, ¶¶ 1-2, 8.) The factors considered in this assignment included the level of security and supervision the inmate requires; the level of security and staff supervision the institution is able to provide; the inmate's program needs, such as substance abuse treatment or vocational training; and various administrative factors, such as balancing inmate populations or placing inmates in facilities where they have no other inmates from whom they require separation. (*Id.* at 10-11, ¶ 7.) Based on these factors, Team Charlie initially assigned Plaintiff to the United States Penitentiary ("USP") in Leavenworth, Kansas. (*See* Mot. App. at 6, ¶ 8; Compl., doc. 1.)

On December 19, 2003, while incarcerated at USP Leavenworth, Plaintiff was physically attacked by a group of five prisoners who were members of a white supremacist gang. (Compl. at 4-2, ¶ 1). His injuries required hospitalization, and the need to ensure his safety resulted in a transfer to the USP in Florence, Colorado. (*Id.* at 4-2 to 4-3, ¶¶ 1-2; Mot. App. at 7, ¶ 13.) Plaintiff avers that at USP Florence on February 8, 2005, he was physically attacked by a gang member who had been incarcerated at USP Leavenworth. (Compl. at 4-3, ¶ 2.) After the submission of a transfer request by USP Florence staff, Defendant Romulo Armendariz ("Defendant"), a Senior Designator at the DSCC and a member of Team Charlie, approved the transfer request and designated Plaintiff to the USP in Pollock, Louisiana, on May 24, 2006. (Mot. App. at 9, ¶ 1; 11, ¶ 9.) Defendant avers

2

that he determined Plaintiff could be appropriately and safely incarcerated in USP Pollock. (*Id*. at 11, ¶ 9.) Defendant further avers that he had no information that there were any inmates at USP Pollock from whom Plaintiff required separation. (*Id*.)

Plaintiff avers that former prisoners from USP Leavenworth threatened him shortly after his arrival at USP Pollock on June 8, 2006. (Compl. at 4-3 to 4-4, ¶ 3; Mot. App. at 2.) After Plaintiff was involved in an incident on June 13, 2006, officials at USP Pollock requested that he be transferred. (Resp. App. at 37-39.) On August 23, 2006, Plaintiff was transferred to USP Beaumont. (Mot. App. at 2.) Based upon "information and belief", Plaintiff states that Defendant and members of Team Charlie received and processed the transfer request, and that Defendant knew of the ongoing risk former prisoners from USP Leavenworth posed to his safety, but assigned him to the USP in Beaumont, Texas, anyway. (Compl. at 4-5, ¶¶ 5-6; 4-7, ¶ 11.) Defendant avers that he was not involved in processing the transfer from USP Pollock to USP Beaumont, (Mot. App. at 11, ¶ 8), and the acting Operations Manager for Team Charlie avers that no one from Team Charlie was involved in this transfer, (*id.* at 6, ¶ 7).

Upon his arrival at USP Beaumont, prison staff interviewed Plaintiff to ascertain whether he could be safely housed in the general population. (Mot. App. at 14, ¶ 5.) Plaintiff avers that he was placed in a cell with two members of the same gangs whose members had previously assaulted him. (Compl. at 4-13, ¶ 29.) He informed staff that he had concerns about his safety due to the nature of his offense, and USP Beaumont staff immediately placed him in protective custody, which segregated him from the general prison population. (Mot. App. at 14, ¶ 5; Resp. App. at 44-47.) Plaintiff remained in segregated status throughout his confinement at USP Beaumont (Mot. App. at 14, ¶ 5), and on October 20, 2006, staff at USP Beaumont requested a transfer (Resp. App. at 47).

3

Based upon "information and belief", Plaintiff states that he was physically attacked while still incarcerated at USP Beaumont on October 23, 2006, by two inmates who were members of the same white supremacist gang as the inmates who had attacked him in USP Leavenworth. (Compl. at 4-7, ¶ 13.) James Gibbs, a Lieutenant at USP Beaumont, disputes the attack occurred because there are no records that Plaintiff was the victim of an assault on this date. (Mot. App. at 14, ¶ 7.) Lieutenant Gibbs notes there was, however, a record of an altercation on October 11, 2006, but that this fight was a result of a mutual exchange over a dispute in a card game. (*Id.*) Both Plaintiff and the other inmate were treated for minor injuries. (*Id.* at 15, ¶ 8.)

Plaintiff was transferred from USP Beaumont on January 9, 2007. (Mot. App. at 1.) As with the transfer from USP Pollock to USP Beaumont, Plaintiff states on "information and belief" that Team Charlie processed this transfer request. (Compl. at 4-9 to 4-10, ¶¶ 17-20.) Plaintiff further states on "information and belief" that Team Charlie knowingly assigned him to the USP in Coleman, Florida, with the knowledge that former prisoners from USP Leavenworth were incarcerated there. (*Id.* at 4-10, ¶ 21; 4-15, ¶ 38.) Defendant avers that he was not involved in processing the transfer from USP Beaumont to USP Coleman; the acting Operations Manager for Team Charlie avers that no one from Team Charlie was involved in this transfer. (Mot. App. at 6, ¶ 7; 11, ¶ 8.)

Plaintiff arrived at USP Coleman on February 6, 2007. (*Id.* at 1.) Shortly thereafter, he was placed in protective custody because prison staff identified the risk of harm to him. (Compl. at 4-16, ¶ 39.) Based upon "information and belief", Plaintiff states that he was placed in protective custody after prison officials discovered prisoners housed there who had presented safety concerns to Plaintiff at other facilities. (*Id.* at 4-10, ¶ 22.) Although former prisoners from USP Leavenworth were incarcerated in USP Coleman, Plaintiff was never physically attacked while at USP Coleman.

4

(*Id*. at 4-10, ¶ 22; 4-16, ¶ 42.)

On December 26, 2007, Plaintiff filed this action. He alleges that Defendant and other members of Team Charlie violated his constitutional rights under the Eighth Amendment when they processed his transfer from USP Pollock to USP Beaumont and from USP Beaumont to USP Coleman. (Compl. at 4-12, ¶ 27; 4-15, ¶ 37.) He requests an injunction from further assaults and attorneys fees and costs pursuant to 42 U.S.C. § 1988. (*Id.* at 4-18, ¶¶ 46-47.)[3] Defendant filed a motion for summary judgment on April 21, 2008, with supporting affidavits. Plaintiff has moved to strike the affidavits and filed a response to the motion for summary judgment with evidence. The parties have fully briefed the motions, and the issues are ripe for review.

## II. MOTION TO STRIKE

**A.** <u>**Donna Alexander**</u>

Plaintiff raises nine overlapping objections to the declaration of Donna Alexander, the acting Operations Manager for the Charlie Team at the DSCC. (Mot. Strike at 7-9.) Objections (a), (b), and (h) contend that the declaration was not filed in accordance with Local Rule 79.3, which provides for the filing of *ex parte* and sealed documents. *See* L.R. 79.3. In accordance with Local Rule 79.3(b), Defendant filed an *ex parte* motion on April 21, 2008, to place the declaration of Donna Alexander under seal. (*See* doc. 24.) Finding good cause, this Court granted the motion on July 24, 2008. (*See* doc. 49.) The declaration therefore did not violate Local Rule 79.3.

Objections (c), (f), and (g) contend that the declaration violates Federal Rule of Civil Procedure 56(e) because Ms. Alexander is either not competent to testify or her statements are hearsay. Rule 56(e) provides in relevant part that "[a] supporting or opposing affidavit must be

---

[3] Plaintiff's complaint contains two paragraphs 46 and two paragraphs 47 on page 4-18. The cite refers to both paragraphs 46 and to the second paragraph 47.

made on personal knowledge, set out facts that would be admissible in evidence, and show the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e). Ms. Alexander avers that she has a supervisory role at DSCC and acts as the Operations Manager for Team Charlie, and that the information in her declaration is based upon her review of official files and records, personal knowledge, or on the basis of information acquired in the performance of her official duties. (Mot. App. at 5, ¶¶ 1-3.) Because the information is based upon her personal knowledge or knowledge of official business records, she is competent to testify, and her statements do not fall within the definition of hearsay. *See* Fed. R. Evid. 602, 801, 803(6).

Objections (d), (g), and (h) contend that Ms. Alexander's statements are false because they conflict with Plaintiff's version of events or his interpretation of statutory language. Plaintiff's disagreement with Ms. Alexander's statements is not a basis for exclusion. The information contained within the declaration is relevant to the questions presented to the Court and is therefore admissible. Fed. R. Evid. 402.

Objection (e) asserts that Defendant should have moved for a "protection order" and that the sealed declaration violates an unspecified Federal Rule of Civil Procedure and Local Rule 7.1(h). The alleged violation of Local Rule 7.1(h) is not apparent and Plaintiff does not provide an evidentiary basis for excluding the declaration.

Finally, objection (i) states that the declaration violates 28 U.S.C. § 1746. This objection is baseless because the declaration explicitly referred to 28 U.S.C. § 1746 and was submitted under penalty of perjury. (Mot. App. at 5, 8.)

Plaintiff's objections to the Alexander Declaration are hereby **OVERRULED**.

**B.     James Gibbs**

Plaintiff also raises two objections to the declaration of James Gibbs, the Lieutenant at USP Beaumont. (Mot. Strike at 10-16.) He first objects that the declaration violates Rule 56(e) because the affiant is either not competent to testify or that his statements are hearsay. Mr. Gibbs avers that he has been employed by the BOP since May of 1992 and that he has access to inmate records and centralized inmate data information. (Mot. App. at 13, ¶ 1.) He also avers that the information in the declaration is based upon his review of official files and records, personal knowledge, or on the basis of information acquired in the performance of his official duties, which include investigating inmate misconduct. (*Id*. at 13, ¶¶ 2-3.) Because the information is based upon his personal knowledge or knowledge of official business records, he is competent to testify and his statements do not fall within the definition of hearsay. *See* Fed. R. Evid. 602, 801, 803(6).

The second objection contends that the declaration is inadmissible because specific numbered paragraphs conflict with Plaintiff's version of the events. This is not a basis for exclusion. The information contained within the declaration is relevant to the questions presented to the Court, and it is therefore admissible. *See* Fed. R. Evid. 402.

Plaintiff's objections to the Gibbs Declaration are hereby **OVERRULED**. Plaintiff's motion to strike is hereby **DENIED** in its entirety.

### III.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists

"if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The pleadings, discovery and disclosure materials on file, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. Fed. R. Civ. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

Generally, the courts liberally construe the pleadings of a *pro se* plaintiff. *See*, *e.g.*, *Haines*

*v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981); *Martin v. United States Post Office*, 752 F. Supp. 213, 218 (N.D. Tex. 1990). However, the courts have no obligation under Fed. R. Civ. P. 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). Instead, a party opposing summary judgment must "identify specific evidence in the record" that supports the challenged claims and "articulate the precise manner in which that evidence supports [a challenged] claim." *Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

### IV. NATURE OF ACTION

Plaintiff commenced this action on a standard form used in actions filed pursuant to 42 U.S.C. § 1983. (*See* Compl. at 1.) Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under § 1983, Plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999).

Defendant initially argues that no deprivation occurred under color of state law because he is a federal actor. (Mot. at 8-10.) Plaintiff responds that he used the form available to him, and that it is clear that his action is one properly filed pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (*See* Resp. at 28.)

9

In *Bivens*, the United States Supreme Court held that the violation of a person's constitutional rights by a federal official may give rise to an action for monetary damages in federal court which is brought pursuant to 28 U.S.C. § 1331, the statute that provides for federal question jurisdiction. "*Bivens*, of course, is the counterpart to 42 U.S.C. § 1983, and extends the protections afforded under § 1983 to parties injured by federal actors." *Chapman v. United States*, No. 4:06-CV-0426-Y, 2006 WL 3831227, at *1 n.8 (N.D. Tex. Dec. 27, 2006). "A *Bivens* action is analogous to an action under § 1983 – the only difference being that § 1983 applies to constitutional violations by state, rather than federal, officials *Evans v. Ball*, 168 F.3d 856, 863 n.10 (5th Cir. 1999). "*Bivens* affords the victim of unconstitutional conduct by a federal actor or agent a direct remedy under the Constitution." *Abate v. S. Pac. Transp. Co.*, 993 F.2d 107, 110 (5th Cir. 1993).

Plaintiff's complaint clearly suggests that Plaintiff proceeds against Defendant as a federal actor. Construing his complaint liberally as required by *Haines v. Kerner*, 404 U.S. 519 (1972), the Court construes this action as arising under *Bivens*. "To sustain a *Bivens* action, a plaintiff must first demonstrate that his constitutional rights have been violated." *Fuller v. Rich*, 925 F.Supp. 459, 462 (N.D. Tex. 1995) (citing *Garcia v. United States*, 666 F.2d 960, 962 (5th Cir. 1982)). The Court thus considers that threshold issue.

## V. CONSTITUTIONAL RIGHT

Defendant moves for summary judgment on grounds that Plaintiff has identified no constitutional rights which have been violated. (Mot. at 7, 10-12.) More specifically, he contends that he was not involved in either transfer that Plaintiff complains about in this action, and that he was not deliberately indifferent to prison conditions that posed a substantial risk of serious harm to Plaintiff. (*Id.*)

10

A prisoner's treatment and his conditions of confinement are subject to scrutiny under the Eighth Amendment to the Constitution of the United States, which proscribes cruel and unusual punishments. *See Farmer v. Brennan,* 511 U.S. 825, 832 (1994). The amendment requires that conditions of confinement be humane, and prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care as well as take reasonable measures to guarantee their safety. *Id.* A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement absent a showing of "deliberate indifference" to a substantial risk of serious harm to an inmate. *Id.* at 828, 834.

To establish deliberate indifference, an inmate must show that the prison official (1) was "aware of the facts from which an inference of excessive risk to the prisoner's health or safety could be drawn," and (2) "actually drew an inference that such potential for harm existed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). *See also Farmer*, 511 U.S. at 837 (noting that deliberate indifference under the Eighth Amendment occurs only where a prison official subjectively knows of and disregards a substantial risk to the inmate's health or safety). Deliberate indifference "describes a state of mind more blameworthy than negligence" but is "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result," *id*. at 835, and it is "an extremely high standard to meet," *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

A. **<u>Right to Transfer</u>**

Although prisoners have a right to be free from cruel and unusual punishments, they have no constitutionally protected interest to serve their sentences in a particular institution, or to be transferred or not transferred from one institution to another. *Olim v. Wakinekona*, 461 U.S. 238,

249-50 (1983); *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir. 1996). Prisoners likewise have no constitutionally protected interest in their custodial classification once assigned to a correctional facility. *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir.1998) (citations omitted), *abrogated on other grounds by Booth v. Churner*, 532 U.S. 732, 735 (2001); *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) (prisoner does not have a basis for a civil rights complaint simply because he disagrees with a classification decision). This is because the BOP, as the custodian of federal prisoners, "may designate any available penal or correctional facility that meets minimum standards of health and habitability. . . that the Bureau determines to be appropriate and suitable." 18 U.S.C. § 3621(b). Additionally, "[t]he Bureau may at any time . . . direct the transfer of a prisoner from one penal or correctional facility to another." *Id*.

Although the parties dispute whether Defendant processed the two transfers at issue, Defendant's personal involvement is immaterial because the mere act of transferring an inmate from one BOP facility to another does not violate a constitutionally protected interest. *Olim*, 461 U.S. at 249-50; *Tighe*, 100 F.3d at 42. *See also Jones v. United States*, 534 F.2d 53, 54 (5th Cir. 1976) (recognizing that prison officials have broad discretion to determine prisoner assignments without judicial intervention). Nor is a constitutionally protected interest violated when a prisoner disagrees with a classification decision. *Neals*, 59 F.3d at 533. Consequently, even if the Court assumes for purposes of this motion for summary judgment that Defendant was involved in the transfers which led to this litigation, the transfers do not violate Plaintiff's constitutional rights unless Plaintiff shows that the transfers amount to a failure to protect his safety.

**B.     Failure to Protect**

Despite the well-settled principles regarding prisoner transfers, an alleged absence of reason-

able safety measures to protect an inmate from other inmates may provide a basis for a failure-to-protect claim. *See*, *e.g.*, *Luong v. Hatt*, 979 F. Supp. 481, 484-85 (N.D. Tex. 1997). In fact, a failure to transfer an inmate after he has received threats to his safety and requested a transfer is sufficient to state a failure-to-protect claim. *Edmond v. Eaves*, 70 Fed. App'x 159, 160 (5th Cir. 2003) (per curiam). Similarly, a transfer of an inmate into an unsafe environment may state an Eighth Amendment claim against the transferring officer.

To succeed on a failure-to-protect claim, the plaintiff must show "a wanton or deliberate attitude on the part of the officer." *Luong*, 979 F. Supp. at 484; *accord Farmer v. Brennan,* 511 U.S. 825, 834 (1994). A prison official cannot be held liable for an alleged failure to protect under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Not only must the official "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, [but] he must also draw the inference." *Id.* Although a prison official may bear some responsibility for placing an inmate in danger through an improvident transfer, such official is not liable under the Eighth Amendment unless the official was consciously indifferent to the danger posed by the transfer or specifically intended the transfer to result in the "wanton infliction of unnecessary pain." *Johnston v. Lucas*, 786 F.2d 1254, 1260 (5th Cir. 1986). In addition, the indifference must actually and proximately cause harm to the plaintiff. *See Ward v. Dallas County Jail*, No. 3:01-CV-1395-N, 2004 WL 2534044, at *2 (N.D. Tex. Nov. 8, 2004) (citing *Leer v. Murphy*, 844 F.2d 628 (9th Cir. 1988)).

Plaintiff cannot succeed on a failure-to-protect claim against Defendant if Defendant was not involved in the transfers at issue. The Court assumes for purposes of this motion, without deciding, that Defendant was involved in the transfers at issue. Mere involvement, however, does not suffice

13

to impose liability for an Eighth Amendment violation. Unless Defendant transferred Plaintiff with specific indifference to a substantial risk of serious harm or to wantonly inflict unnecessary pain upon Plaintiff, his actions do not rise to the level of an Eighth Amendment violation. *See Farmer*, 511 U.S. at 834-37; *Johnston*, 786 F.2d at 1260; *Luong*, 979 F. Supp. at 484-85. Here, Defendant has identified evidence in the record that establishes that he did not act with deliberate indifference to Plaintiff's safety. (Mot. App. at 11, ¶ 9; *see Celotex*, 477 U.S. at 323.) Accordingly, the burden shifts to Plaintiff to direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324.

In his verified complaint, Plaintiff avers that Defendant transferred him to a "known unsafe prison". (Compl. at 3.)[4] Two transfers are at issue in this case – one from USP Pollock to USP Beaumont and one from USP Beaumont to USP Coleman. (*Id.* at 4 to 4-2.) Plaintiff avers that information contained within the prison data system ("Sentry") provided Defendant notice that he had been transferred from USP Leavenworth, USP Florence, and USP Pollock for safety reasons. (*Id.* at 4-12, ¶ 27.) Despite such notice, he contends, Defendant transferred him to a prison (USP Beaumont) where he would again be unsafe "due to his class as offender that would be subjected to serious harm" and due to the presence of inmates who were in gangs that had harmed him before.

---

[4] Plaintiff's complaint was sworn. A verified complaint may serve as competent summary judgment evidence "to the extent that it comports with the requirements of Fed. R. Civ. P. 56(e)." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994); *accord Barnes v. Johnson*, 204 Fed. App'x 377, 378 (5th Cir. 2006) (per curiam). However, the requirements of Rule 56(e) are not met by an affirmative statement that the verified complaint or affidavit "is only based on 'information and belief.'" *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 n.40 (5th Cir. 2005); *accord Bolen v. Dengel*, 340 F.3d 300, 313 (5th Cir. 2003). Plaintiff has prefaced numerous paragraphs within his verified complaint with "[u]pon information and belief" (*see id.* at 4-5 to 4-10, ¶¶ 5-19, 21-22), or "[h]aving information and belief" (*id.* at 4-9, ¶ 20). While papers from the party opposing summary judgment "should not be held to as strict a standard as those of the movant for summary judgment", and the courts may look past technical non-compliance with Rule 56(e), it is a proper exercise of the court's discretion to ignore information that is not based upon personal knowledge as required by Rule 56(e). *Richardson v. Oldham*, 12 F.3d 1373, 1378 & n.17 (5th Cir. 1994). Consequently, the Court does not rely on the portions of the verified complaint that are expressly based only upon Plaintiff's information and belief.

(*Id.*) Plaintiff avers that Defendant's actions exposed him to a substantial risk of serious harm, and that Defendant was "deliberately indifferent to that risk." (*Id.* at 4-11, ¶ 25.)

Despite these averments, Plaintiff identifies no evidence creating a factual dispute as to whether Defendant transferred him to a particular prison facility to wantonly inflict pain upon him or with indifference to a substantial risk of serious harm. His conclusory allegations that Defendant was deliberately indifferent to the risk of harm presented by the transfers are not competent summary judgment evidence. *See Richardson v. Oldham*, 12 F.3d 1373, 1378 (5th Cir. 1994). The mere availability of information to Defendant via Sentry does not suffice to show intent to wantonly inflict pain upon Plaintiff. As shown by the Defendant's evidence, the specifics of Plaintiff's incarceration, *i.e.*, cell assignment and decisions regarding placement in the general population or protective custody, are determined by prison officials at the facility, not by Defendant.[5] Plaintiff concedes that he was transferred from certain prison facilities after specific safety concerns came to light, and he has identified no admissible record evidence showing that Defendant's alleged indifference actually and proximately caused him harm after the two transfers at issue in this lawsuit. *See Ward*, 2004 WL 2534044, at *2.

Because Plaintiff has no right to a transfer to a particular prison facility, and he has not carried his summary judgment burden to identify record evidence showing a fact issue regarding whether Defendant had the requisite culpable state of mind when transferring him, he cannot sustain the instant *Bivens* action. *See Fuller v. Rich*, 925 F.Supp. 459, 462 (N.D. Tex. 1995). Defendant's motion for summary judgment should be granted on this basis, and Plaintiff's claims against him

---

[5] Placement and transfer decisions are made in accordance with 18 U.S.C. § 3621(b), which requires prison officials to consider certain factors, including "the nature and circumstances of the offense" and "the history and characteristics of the prisoner", when directing a prisoner transfer.

should be dismissed. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## VI. RULE 56(f) MOTION

Plaintiff cites to Rule 56(f) in his response as a reason for why summary judgment should be denied. (Resp. at 22-26.) Specifically, he contends that summary judgment should be denied because (1) he has not had time to obtain the affidavits of unidentified staff members who told him Defendant was involved in the transfers at issue and (2) he has not yet obtained the video of the assault that allegedly occurred in USP Beaumont on October 23, 2006.

When a party believes it needs more time to obtain discovery to respond satisfactorily to a motion for summary judgment, Rule 56(f) is the proper remedy. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1266 (5th Cir. 1991). Rule 56(f) provides that

> [i]f a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order.

Ordinarily, Rule 56(f) discovery motions are "broadly favored and should be liberally granted" because the rule is designed to "safeguard non-moving parties from summary judgment motions that they cannot adequately oppose." *Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir. 2006). The Fifth Circuit does not impose a literal interpretation of Rule 56(f) upon *pro se* litigants. *Joseph v. City of Dallas*, No. 07-11235, 2008 WL 1976619, at *8 (5th Cir. May 6, 2008) (per curiam) (citing *Haines*, 404 U.S. at 520; *Int'l Shortstop*, 939 F.2d at 1266-67). However, at a minimum, a party must show: (1) why he needs additional discovery; and (2) how that discovery would likely create a fact issue that would defeat summary judgment. *See Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 535 (5th Cir. 1999).

In this case, even assuming that Plaintiff could obtain affidavits stating that Defendant was

16

involved in the transfers at issue or that a video of the October 23, 2006 assault actually exists, he still would not be able to show that he suffered a constitutional violation. *See* Part V, *supra*. Because Plaintiff did not suffer a constitutional violation, he has not met his burden to show how further discovery would create a genuine issue of material fact. *See Stearns Airport*, 170 F.3d at 535; *RTC v. Sharif-Munir-Davidson Dev. Corp.*, 992 F.2d 1398, 1401 (5th Cir. 1993). Accordingly, Plaintiff's Rule 56(f) motion is **DENIED**.

## VII.  CONCLUSION

For the reasons stated above, the Court recommends that Defendant's *Motion for Summary Judgment* be **GRANTED**.

**SO RECOMMENDED** on this 19th day of August, 2008.

                                                                                 _____
                                                                                 **IRMA CARRILLO RAMIREZ**
                                                                                 **UNITED STATES MAGISTRATE JUDGE**

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985)*; Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992).  Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

                                                                                 _____
                                                                                 IRMA CARRILLO RAMIREZ
                                                                                 UNITED STATES MAGISTRATE JUDGE