IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRIAN L. BROWN, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:07-CV-2154-O (BH) |
| | § | |
| ROMULO ARMENDARIZ, et al., | § | |
|     Defendants. | § | Pretrial Management |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS

Pursuant to Special Order No. 3-251, the District Court referred this case for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations to the District Court on dispositive motions. Before the Court is a *Motion to Dismiss or, in the alternative, for Summary Judgment on Behalf of New Federal Defendants and Brief in Support* ("Mot."), filed by Defendants Robert Keleman, Nathan Patterson, Mark Race, Delbert Sauers, and Rick Stover[1] on July 10, 2008, (doc. 46). Despite several extensions of time to respond to the motion, Plaintiff has filed no response.

Based on the relevant filings and applicable law, the Court recommends that Defendants' motions to dismiss be **DENIED** and their alternate motion for summary judgment be **GRANTED**.

## I. BACKGROUND

Plaintiff Brian Brown ("Plaintiff") is a federal prisoner serving a life sentence for kidnaping and aggravated sexual abuse of a child. (App. Mot. Dismiss or for Summ. J. [hereinafter "Mot. App."] at 3.) On December 19, 2003, while incarcerated at a United States Penitentiary ("USP") in Leavenworth, Kansas, Plaintiff was physically attacked by a group of five prisoners who were

---

[1] On or about December 26, 2007, Plaintiff commenced this action against Romulo Armendariz and unknown members of "Team Charlie" at the Bureau of Prison's ("BOP") Designation and Sentence Computation Center ("DSCC"), located in Grand Prairie, Texas. Plaintiff subsequently identified the five movants as defendants in this action without altering the allegations of his complaint.

members of a white supremacist gang. (Compl. at 4-2, ¶ 1). His injuries required hospitalization, and he was transferred to the USP in Florence, Colorado, to ensure his safety. (*Id*. at 4-2 to 4-3, ¶¶ 1-2.) Plaintiff avers that at USP Florence on February 8, 2005, he was physically attacked by a gang member who had been incarcerated at USP Leavenworth. (*Id.* at 4-3, ¶ 2.) Plaintiff was then transferred to the USP in Pollock, Louisiana. (*Id.*)

Plaintiff avers that former prisoners from USP Leavenworth threatened him shortly after his arrival at USP Pollock on June 8, 2006. (*Id.* at 4-3 to 4-4, ¶ 3; *accord* Mot. App. at 13.) After Plaintiff was involved in an incident on June 13, 2006, officials at USP Pollock requested that he be transferred. (Mot. App. at 13-16.) On August 23, 2006, Plaintiff was transferred to USP Beaumont. (*Id.* at 1.) Plaintiff states, based upon "information and belief", that members of Team Charlie received and processed the transfer request, and that they knew of the ongoing risk from former prisoners from USP Leavenworth, but they assigned him to USP Beaumont anyway. (Compl. at 4-5, ¶¶ 5-6; 4-7, ¶ 11.)

Defendants Sauers and Race aver that "Hotel Team", not Team Charlie, was responsible for the USP Beaumont assignment. (Mot. App. at 23, 25; *accord* Decl. Alexander at ¶ 8 (submitted in response to prior motion for summary judgment and incorporated by reference in response to the instant motion).) They, along with Defendant Patterson, aver that they were not involved in processing the transfer from USP Pollock to USP Beaumont. (Mot. App. at 19-20, 23, 28; *accord* Decl. Alexander at ¶¶ 9-10.) Defendant Keleman avers that as a member of "Hotel Team", he transferred Plaintiff from USP Pollock to USP Beaumont after reviewing available information and the factors set out in BOP Program Statement 5100.08 and concluding that Plaintiff could be appropriately housed there. (Mot. App. at 9-10, ¶¶ 6-10.) He further avers that he knew that if

2

unknown safety concerns existed at USP Beaumont, local staff could evaluate the situation and take appropriate action. (*Id.* at 11, ¶ 10.)

Upon his arrival at USP Beaumont, prison staff interviewed Plaintiff to ascertain whether he could be safely housed in the general population. (*Id.* at 6, ¶ 5.) Plaintiff avers that he was placed in a cell with two members of the same gangs whose members had previously assaulted him. (Compl. at 4-13, ¶ 29.) He informed staff that he had concerns about his safety due to the nature of his offense, and USP Beaumont staff immediately placed him in protective custody segregated from the general prison population throughout his confinement at USP Beaumont. (Mot. App. at 6, ¶ 5.) On October 20, 2006, staff at USP Beaumont requested a transfer. (*Id.* at 33, 35.)

Based upon "information and belief", Plaintiff states that he was physically attacked while still incarcerated at USP Beaumont on October 23, 2006, by two inmates who were members of the same white supremacist gang as the inmates who had attacked him in USP Leavenworth. (Compl. at 4-7, ¶ 13.) James Gibbs, a Lieutenant at USP Beaumont, disputes the attack occurred because there are no records that Plaintiff was the victim of an assault on this date. (Mot. App. at 6, ¶ 7.) Lieutenant Gibbs notes there was, however, a record of an altercation on October 11, 2006, that resulted from a card game. (*Id.*) Both Plaintiff and the other inmate were treated for minor injuries. (*Id.* at 7, ¶ 8.)

Plaintiff was transferred from USP Beaumont on January 9, 2007. (Mot. App. at 1.) As with the transfer from USP Pollock to USP Beaumont, Plaintiff states on "information and belief" that Team Charlie processed this transfer request. (Compl. at 4-9 to 4-10, ¶¶ 17-20.) Plaintiff further states on "information and belief" that Team Charlie knowingly assigned him to a USP in Coleman, Florida, with the knowledge that former prisoners from USP Leavenworth were incarcerated there.

3

(*Id*. at 4-10, ¶ 21; 4-15, ¶ 38.)

Defendants Sauers, Race, and Patterson aver that they were not involved in processing the transfer from USP Beaumont. (Mot. App. at 19-20, 23, 28; *accord* Decl. Alexander at ¶¶ 9-10.) Defendant Stover avers that as a member of "Hotel Team", he approved Plaintiff's transfer from USP Beaumont to USP Coleman after reviewing available information and the factors set out in BOP Program Statement 5100.08 and concluding that Plaintiff could be appropriately housed there. (Mot. App. at 30-32, ¶¶ 6-10.) Stover further avers that on the date of his transfer decision, December 19, 2006, he had no information that Plaintiff could not be safely housed at USP Coleman. (*Id.* at 32, ¶ 9.) Because Stover received information on January 24, 2007, that inmates at USP Coleman were aware of Plaintiff's offense, he cancelled the USP Coleman designation and approved a transfer to a different USP Coleman facility ("USP Coleman I") on January 25, 2007. (*Id.* at 32, ¶ 11.) Stover avers that he had no information that Plaintiff could not be safely housed there, and that local staff could evaluate safety concerns and take appropriate action. (*Id.*)

Plaintiff arrived at USP Coleman I on February 6, 2007. (*Id.* at 1.) Shortly thereafter, he was placed in protective custody because prison staff identified the risk of harm to him. (Compl. at 4-16, ¶ 39.) Based upon "information and belief", Plaintiff states that he was placed in protective custody after prison officials discovered that prisoners who had presented safety concerns to Plaintiff at other facilities were housed there. (*Id.* at 4-10, ¶ 22.) Although former prisoners from USP Leavenworth were incarcerated in USP Coleman I, Plaintiff was never physically attacked while at USP Coleman I. (*Id*. at 4-10, ¶ 22; 4-16, ¶ 42.)

On December 26, 2007, Plaintiff filed this action. He alleges that Defendants violated his constitutional rights under the Eighth Amendment when they processed his transfer from USP

4

Pollock to USP Beaumont and from USP Beaumont to USP Coleman I. (Compl. at 4-12, ¶ 27; 4-15, ¶ 37.) He requests an injunction from further assaults and attorneys fees and costs pursuant to 42 U.S.C. § 1988. (*Id.* at 4-18, ¶¶ 46-47.)[2] After being served with process, Defendants filed the instant motion to dismiss under Fed. R. Civ. P. 12(b)(1) and (6) and alternate motion for summary judgment on July 10, 2008, with supporting affidavits. To date, Plaintiff has filed no response. The issues are ripe for review.

## II. RULE 12(b)(1) MOTION TO DISMISS

Although Defendants seek dismissal under Fed. R. Civ. P. 12(b)(6) and summary judgment under Fed. R. Civ. P. 56, they also invoke Rule 12(b)(1). (*See* Mot. at 1, 16.) A motion to dismiss for lack of subject matter jurisdiction is properly brought pursuant to Rule 12(b)(1).

Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims. *See Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id*. When the court dismisses for lack of subject matter jurisdiction, that dismissal "is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id*.

The Fifth Circuit recognizes a distinction between a "facial attack" and a "factual attack" upon a complaint's subject matter jurisdiction. *Rodriguez v. Tex. Comm'n on the Arts*, 992 F. Supp.

---

[2] Plaintiff's complaint contains two paragraphs 46 and two paragraphs 47 on page 4-18. The cite refers to both paragraphs 46 and to the second paragraph 47.

5

876, 878 (N.D. Tex. 1998), *aff'd*, 199 F.3d 279 (2000). "A facial attack requires the court merely to decide if the plaintiff has correctly alleged a basis for subject matter jurisdiction" by examining the allegations in the complaint, which are presumed to be true. *Id*. If the defendant supports the motion with evidence, however, then the attack is "factual" and "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). Regardless of the attack, "[t]he plaintiff constantly bears the burden of proof that jurisdiction does exist." *Rodriguez*, 992 F. Supp. at 879 ("The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.").

In this case, Defendants do not appear to support the 12(b)(1) aspect of their motion with evidence. They present a facial attack that does not require the Court to resolve matters outside the pleadings. *See Ramming*, 281 F.3d at 161; *Williamson*, 645 F.2d at 412-13. In fact, they do not even specify the basis for a jurisdictional dismissal. To the contrary, they concede that Plaintiff's complaint "appears to be brought for civil rights violations pursuant to 42 U.S.C. § 1983 based upon alleged violation of Eighth Amendment." (*See* Mot. at 6.) Section 1983 certainly provides an adequate jurisdictional basis for this action.[3] Furthermore, as this Court has already determined in a prior motion for summary judgment, this action is properly construed as arising from *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). For these reasons, the Court should deny Defendants' motion to dismiss under Rule 12(b)(1).

---

[3] Although Defendants argue and present evidence that § 1983 provides an improper basis for this action, their argument goes to whether Plaintiff has stated a claim upon which relief can be granted, not whether § 1983 provides a jurisdictional basis for this action. The Court further discusses this argument later.

### III.  RULE 12(b)(6) MOTION TO DISMISS

Defendants also move to dismiss Plaintiff's complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  (Mot. Dismiss at 14-16.)  Defendants argue that 42 U.S.C. § 1983 provides no basis for imposing liability on them because they are federal, not state actors.  (Mot. at 17-18.)

Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are disfavored and rarely granted.  *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981).  Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers."  *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981).  However, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *Baker*, 75 F.3d at 196.  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007) (citation omitted).[4]  Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id*.  The alleged facts must "raise a right to relief above the speculative level."  *Id*.  In short, a complaint fails to state a claim upon which

---

[4]  "Although the context of the discussion in *Bell Atlantic* was the Sherman Act, nothing in the reasoning of the decision appears to limit its scope to Sherman Act claims."  *Halaris v. Viacom, Inc.*, No. 3:06-CV-1646-N, 2007 WL 4145405, at *4 (N.D. Tex. Sept. 21, 2007).

relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face."[5] *Id.* at 1974.

Here, Plaintiff filed his action on a standard form used in actions filed pursuant to 42 U.S.C. § 1983. (*See* Compl. at 1.) Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under § 1983, Plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999).

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the United States Supreme Court held that the violation of a person's constitutional rights by a federal official may give rise to an action for monetary damages in federal court which is brought pursuant to 28 U.S.C. § 1331, the statute that provides for federal question jurisdiction. "*Bivens*, of course, is the counterpart to 42 U.S.C. § 1983, and extends the protections afforded under § 1983 to parties injured by federal actors." *Chapman v. United States*, No. 4:06-CV-0426-Y, 2006 WL 3831227, at *1 n.8 (N.D. Tex. Dec. 27, 2006). "A *Bivens* action is analogous to an action under § 1983 – the only difference being that § 1983 applies to constitutional violations by state, rather than federal, officials *Evans v. Ball*, 168 F.3d 856, 863 n.10 (5th Cir. 1999). "*Bivens* affords the victim of unconstitutional conduct by a federal actor or agent a direct remedy under the

---

[5]*Bell Atlantic* abrogated the long-standing standard enunciated in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) urged by Defendant that a complaint fails to state a claim upon which relief may be granted when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See* 127 S. Ct. at 1968-69 & n.8.

8

Constitution." *Abate v. S. Pac. Transp. Co.*, 993 F.2d 107, 110 (5th Cir. 1993).

Plaintiff's complaint clearly suggests that he proceeds against Defendants as federal actors. Construing his complaint liberally as required by *Haines v. Kerner*, 404 U.S. 519 (1972), the Court construes this action as arising under *Bivens*. For this reason, the Court should deny the Rule 12(b)(6) motion.

## IV. RULE 56 MOTION FOR SUMMARY JUDGMENT

Defendants move, in the alternative, for summary judgment under Fed. R. Civ. P. 56 on grounds that Plaintiff has identified no constitutional violation. (Mot. at 16-26.)

### A. Legal Standard

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The pleadings, discovery and disclosure materials on file, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. Fed. R. Civ. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the non-movant "must do more than simply show

that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *id*. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

Generally, the courts liberally construe the pleadings of a *pro se* plaintiff. *See*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981); *Martin v. U.S. Post Office*, 752 F. Supp. 213, 218 (N.D. Tex. 1990). However, the courts have no obligation under Fed. R. Civ. P. 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). Instead, a party opposing summary judgment must "identify specific evidence in the record" that supports the challenged claims and "articulate the precise manner in which that evidence supports [a challenged] claim." *Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

**B. Constitutional Violation**

Defendants contend that Plaintiff has identified no constitutional violation because Defendants Race, Patterson and Sauers were not involved in the two transfers at issue. (Mot. at 16-26.) While conceding their involvement with relevant transfers, Defendants Keleman and Stover contend that they were not deliberately indifferent to prison conditions that posed a substantial risk of serious harm to Plaintiff and followed standard BOP procedures. (*Id.* at 22-23.)

"To sustain a *Bivens* action, a plaintiff must first demonstrate that his constitutional rights have been violated." *Fuller v. Rich*, 925 F.Supp. 459, 462 (N.D. Tex. 1995) (citing *Garcia v. United States*, 666 F.2d 960, 962 (5th Cir. 1982)). A prisoner's treatment and his conditions of confinement are subject to scrutiny under the Eighth Amendment to the Constitution of the United States, which proscribes cruel and unusual punishments. *See Farmer v. Brennan,* 511 U.S. 825, 832 (1994). The amendment requires that conditions of confinement be humane, and prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care as well as take reasonable measures to guarantee their safety. *Id.* A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement absent a showing of "deliberate indifference" to a substantial risk of serious harm to an inmate. *Id.* at 828, 834.

To establish deliberate indifference, an inmate must show that the prison official (1) was "aware of the facts from which an inference of excessive risk to the prisoner's health or safety could be drawn," and (2) "actually drew an inference that such potential for harm existed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). *See also Farmer*, 511 U.S. at 837 (noting that deliberate indifference under the Eighth Amendment occurs only where a prison official subjectively knows of and disregards a substantial risk to the inmate's health or safety). Deliberate indifference "describes a

11

state of mind more blameworthy than negligence" but is "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result," *id*. at 835, and it is "an extremely high standard to meet," *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

### 1. *Personal Involvement*

To impose liability upon a particular individual defendant, there must be some showing of personal involvement by that individual. *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999); *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). A *Bivens* action must be premised upon the personal involvement of the named defendants. *See FDIC v. Meyer*, 510 U.S. 471, 485 (1994) (explaining that it "must be remembered that the purpose of *Bivens* is to deter *the officer*"); *Guerrero-Aguilar v. Ruano*, 118 Fed. App'x 832, 832 (5th Cir. 2004) (per curiam); *Carney v. United States*, No. 3:99-CV-1989-M, 2004 WL 1285037, at *13 (N.D. Tex. June 9, 2004) (recommendation of Mag. J.), *accepted by* 2004 WL 2250277 (N.D. Tex. Sept. 30, 2004) *and aff'd*, 182 Fed. App'x 295 (5th Cir. 2006).

Defendants Race, Patterson and Sauers provide competent summary judgment evidence through properly verified affidavits that they were not involved in the transfer decisions at issue in this case. (*See* Mot. App. at 19-20, 23, 28; Decl. Alexander at ¶¶ 9-10.) Plaintiff's allegations against them are premised merely on "information and belief", (Compl. at 4-5, ¶¶ 5-6; 4-7, ¶ 11), which cannot be relied upon to avoid summary judgment, *see DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 n.40 (5th Cir. 2005); *accord Bolen v. Dengel*, 340 F.3d 300, 313 (5th Cir. 2003).[6]

---

[6] Plaintiff's complaint was sworn. A verified complaint may serve as competent summary judgment evidence "to the extent that it comports with the requirements of Fed. R. Civ. P. 56(e)." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994); *accord Barnes v. Johnson*, 204 Fed. App'x 377, 378 (5th Cir. 2006) (per curiam). However, the requirements of Rule 56(e) are not met by an affirmative statement that the verified complaint or affidavit "is only based on 'infor-

12

Summary judgment should be granted for Defendants Race, Patterson, and Sauers based on the undisputed fact that they were not involved in the transfer decisions which led to this litigation.

### 2. *Failure to Protect*

Because Defendants Keleman and Stover were involved in relevant transfers, the Court considers whether Plaintiff has shown that they have violated his constitutional rights.

Although prisoners have a right to be free from cruel and unusual punishments, they have no constitutionally protected interest to serve their sentences in a particular institution, or to be transferred or not transferred from one institution to another. *Olim v. Wakinekona*, 461 U.S. 238, 249-50 (1983); *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir. 1996). Prisoners likewise have no constitutionally protected interest in their custodial classification once assigned to a correctional facility. *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir.1998) (citations omitted), *abrogated on other grounds by Booth v. Churner*, 532 U.S. 732, 735 (2001); *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) (prisoner does not have a basis for a civil rights complaint simply because he disagrees with a classification decision). This is because the BOP, as the custodian of federal prisoners, "may designate any available penal or correctional facility that meets minimum standards of health and habitability. . . that the Bureau determines to be appropriate and suitable." 18 U.S.C. § 3621(b). Additionally, "[t]he Bureau may at any time . . . direct the transfer of a prisoner from one penal or correctional facility to another." *Id*. The mere act of transferring an inmate from one BOP facility to another

---

mation and belief.'" *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 n.40 (5th Cir. 2005); *accord Bolen v. Dengel*, 340 F.3d 300, 313 (5th Cir. 2003). Plaintiff has prefaced numerous paragraphs within his verified complaint with "[u]pon information and belief" (*see* Compl. at 4-5 to 4-10, ¶¶ 5-19, 21-22), or "[h]aving information and belief" (*id.* at 4-9, ¶ 20). While papers from the party opposing summary judgment "should not be held to as strict a standard as those of the movant for summary judgment", and the courts may look past technical non-compliance with Rule 56(e), it is a proper exercise of the court's discretion to ignore information that is not based upon personal knowledge as required by Rule 56(e). *Richardson v. Oldham*, 12 F.3d 1373, 1378 & n.17 (5th Cir. 1994). Consequently, the Court does not rely on the portions of the verified complaint that are expressly based only upon Plaintiff's information and belief.

does not violate a constitutionally protected interest. *Olim*, 461 U.S. at 249-50; *Tighe*, 100 F.3d at 42. *See also Jones v. United States*, 534 F.2d 53, 54 (5th Cir. 1976) (recognizing that prison officials have broad discretion to determine prisoner assignments without judicial intervention). Nor is a constitutionally protected interest violated when a prisoner disagrees with a classification decision. *Neals*, 59 F.3d at 533.

Despite the well-settled principles regarding prisoner transfers, an alleged absence of reasonable safety measures to protect an inmate from other inmates may provide a basis for a failure-to-protect claim. *See*, *e.g.*, *Luong v. Hatt*, 979 F. Supp. 481, 484-85 (N.D. Tex. 1997). In fact, a failure to transfer an inmate after he has received threats to his safety and requested a transfer is sufficient to state a failure-to-protect claim. *Edmond v. Eaves*, 70 Fed. App'x 159, 160 (5th Cir. 2003) (per curiam). Similarly, a transfer of an inmate into an unsafe environment may state an Eighth Amendment claim against the transferring officer.

To succeed on a failure-to-protect claim, the plaintiff must show "a wanton or deliberate attitude on the part of the officer." *Luong*, 979 F. Supp. at 484; *accord Farmer v. Brennan,* 511 U.S. 825, 834 (1994). A prison official cannot be held liable for an alleged failure to protect under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Not only must the official "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, [but] he must also draw the inference." *Id.* Although a prison official may bear some responsibility for placing an inmate in danger through an improvident transfer, such official is not liable under the Eighth Amendment unless the official was consciously indifferent to the danger posed by the transfer or specifically intended the transfer to result in the "wanton infliction of unnecessary pain." *Johnston v. Lucas*, 786

14

F.2d 1254, 1260 (5th Cir. 1986). In addition, the indifference must actually and proximately cause harm to the plaintiff. *See Ward v. Dallas County Jail*, No. 3:01-CV-1395-N, 2004 WL 2534044, at *2 (N.D. Tex. Nov. 8, 2004) (citing *Leer v. Murphy*, 844 F.2d 628 (9th Cir. 1988)).

Although Defendants Keleman and Stover were involved in the transfers at issue, mere involvement does not suffice to impose liability for an Eighth Amendment violation. Unless they transferred Plaintiff with specific indifference to a substantial risk of serious harm or to wantonly inflict unnecessary pain upon Plaintiff, their actions do not rise to the level of an Eighth Amendment violation. *See Farmer*, 511 U.S. at 834-37; *Johnston*, 786 F.2d at 1260; *Luong*, 979 F. Supp. at 484-85. Here, Defendants have identified evidence in the record that establishes that they did not act with deliberate indifference to Plaintiff's safety. (Mot. App. at 8-11, 29-32); *see Celotex*, 477 U.S. at 323. Accordingly, the burden shifts to Plaintiff to direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324.

In his verified complaint, Plaintiff avers that members of Team Charlie were involved in the transfers from USP Pollock to USP Beaumont and from USP Beaumont to USP Coleman I that which threatened his safety and caused intentional injury. (Compl. at 3-2 to 3-3; 4 to 4-2.) Plaintiff avers that information contained within the prison data system ("Sentry") provided Defendants notice that he had been transferred from USP Leavenworth, USP Florence, and USP Pollock for safety reasons. (*Id.* at 4-12, ¶ 27.) Despite such notice, he contends, Defendants transferred him to a prison where he would again be unsafe "due to his class as offender that would be subjected to serious harm" and due to the presence of inmates who were in gangs that had harmed him before. (*Id.*) Plaintiff avers that Defendants' actions exposed him to a substantial risk of serious harm, and

15

that Defendants were "deliberately indifferent to that risk." (*Id.* at 4-11, ¶ 25.)

Despite these averments, Plaintiff identifies no evidence creating a factual dispute as to whether any defendant transferred him to a particular prison facility to wantonly inflict pain upon him or with indifference to a substantial risk of serious harm. His conclusory allegations that Defendants were deliberately indifferent to the risk of harm presented by the transfers are not competent summary judgment evidence. *See Richardson v. Oldham*, 12 F.3d 1373, 1378 (5th Cir. 1994). Assuming that Plaintiff's assertions about the availability of relevant information on Sentry are true, he has still not identified evidence of Defendants' intent to wantonly inflict pain upon Plaintiff. As shown by Defendants' evidence, the specifics of Plaintiff's incarceration, *i.e.*, cell assignment and decisions regarding placement in the general population or protective custody, are determined by prison officials at the facility, not by any defendant named in this action.[7] Plaintiff concedes that he was transferred from certain prison facilities after specific safety concerns came to light, and he has identified no admissible record evidence showing that Defendants' alleged indifference actually and proximately caused him harm after the two transfers at issue in this lawsuit. *See Ward*, 2004 WL 2534044, at *2.

Because Plaintiff has not carried his summary judgment burden to identify record evidence showing a fact issue regarding whether any defendant had the requisite culpable state of mind when transferring him, he cannot sustain the instant *Bivens* action. *See Fuller v. Rich*, 925 F.Supp. 459, 462 (N.D. Tex. 1995). Defendants Keleman and Stover's motion for summary judgment should be granted on this basis, and Plaintiff's claims against them should be dismissed. Fed. R. Civ. P. 56(c);

---

[7] Placement and transfer decisions are made in accordance with 18 U.S.C. § 3621(b), which requires prison officials to consider certain factors, including "the nature and circumstances of the offense" and "the history and characteristics of the prisoner" when directing a prisoner transfer.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## V.  CONCLUSION

For the reasons stated above, it is recommended that the Court **DENY** Defendants' motions to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and **GRANT** their motion for summary judgment under Rule 56.

**SO RECOMMENDED** on this 6th day of November, 2008.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985)*; Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992).  Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE